IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| RODNEY D. HARRIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:19-cv-00639-P |
| | § | |
| CENLAR FSB, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Cenlar FSB's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim (ECF No. 6), filed August 20, 2019. Having considered the Motion, briefing, and the applicable law, the Court finds that Cenlar's Motion to Dismiss should be and is hereby **GRANTED in part** and **DENIED in part**.

**I.    BACKGROUND**[1]

Plaintiff Rodney D. Harris alleges in his Original Petition that he owns and resides at 8509 Cactus Flower Drive, Fort Worth, Texas 76131 ("Property"). Orig. Pet. at ¶ 8, ECF No. 1-3. Harris states that in connection with his purchase of the Property, on or about February 8, 2005, he "allegedly signed a Promissory Note" in the amount of $176,550 in favor of Military Mortgage DBA of American Investment. *Id.* at ¶ 9. Harris acknowledges

---

[1]The Court draws its factual account from the allegations in Harris's Original Petition. *See Manguno v. Prudential Prop. & Case. Ins. Co.*, 276 F.3d 720, 725 (5th Cir. 2002) (noting that when considering a Rule 12(b)(6) motion to dismiss, "all facts pleaded in the complaint must be taken as true").

1

that the Note is secured by a Deed of Trust. *Id.* at ¶ 10. Harris alleges that the loan was assigned to CitiMortgage, Inc. as the mortgagee and servicer. *Id.* at ¶ 11.

After suffering financial hardship, Harris contacted CitiMortgage to request loss mitigation assistance. *Id.* at ¶ 12. Harris states that he submitted a complete loan modification application to CitiMortgage on or about March 28, 2019, but while he was in the process of seeking a modification, Harris was able secure a third-party, bona-fide purchaser to buy the Property. *Id.* at ¶¶ 13–14. Harris claims that he requested a payoff amount from CitiMortgage in May 2019, and had June 30, 2019, as a closing date. *Id.* at ¶ 15. However, Harris states that sometime in April 2019, the servicing of the loan was transferred to Cenlar, and when he requested an updated payoff figure for closing, the payoff amount that Cenlar sent had increased by approximately $55,000. *Id.* at ¶ 16. This increased payoff amount stopped the sale of the Property. *Id.*

Harris asked Cenlar for an explanation as to why the payoff amount had increased, but he has not received any information from Cenlar. *Id.* at ¶ 17. Harris further alleges that he has not received any mortgage statements from Cenlar, so he has no way to determine or calculate the balance due on the loan. *Id.* at ¶ 18.

Harris states that he has yet to receive any notification whether his loan modification application has been approved. *Id.* at ¶ 19. Then, Harris received a notice of foreclosure, scheduled for August 6, 2019. *Id.* at ¶ 20. According to Harris, the loan has been accelerated for more than four years, so a foreclosure is barred by limitations. *Id.*

On August 5, 2019, Harris filed his Original Petition and Application for Temporary Restraining Order against Cenlar and CitiMortgage in the 48th District Court of Tarrant

County, Texas.[2] *See* ECF No. 1-3 at 4. Harris asserted claims violations of three sections of the Texas Debt Collection Practices Act ("TDCPA") and negligent misrepresentation and sought declaratory judgments and injunctive relief. *Id.* at 4–7. The same day, the 48th District Court granted a temporary restraining order against Cenlar and CitiMortgage restraining them from conducting the August 6, 2019 foreclosure. *Id.* at 27–28.

On August 13, 2019, Cenlar removed the case to this Court. ECF No. 1. On August 20, 2019, Cenlar filed a 12(b)(6) Motion to Dismiss. MTD, ECF No. 6. On September 10, 2019, Harris filed a Motion to Extend time to File a Response, which the Court granted thereby extending Harris's deadline to respond to October 1, 2019. *See* ECF Nos. 8–9. It is now more than three weeks after Harris's new deadline and no response has been filed.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 8 does not require detailed factual allegations, but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6).

---

[2]After the case was removed, Harris and CitiMortgage filed a joint stipulation of dismissal, and the Court entered an order dismissing Harris's claims against CitiMortgage with prejudice. ECF Nos. 10–11.

3

To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

"Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citations omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A court may also consider documents that a defendant

4

attaches to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *Collins*, 224 F.3d at 498–99.

## III. ANALYSIS

Harris asserts claims against Cenlar in his Original Petition for violations of the TDCPA and negligent misrepresentation and he also seeks a declaratory judgment and injunctive relief. *See* Orig. Pet. at ¶¶ 22–37, ECF No. 1-3. Cenlar's motion to dismiss seeks dismissal of each claim. *See* MTD. The Court examines each claim in turn.

### A. Harris's TDCPA Claim

Harris's Original Petition alleges that Defendants violated sections 392.304(a)(3), (a)(8), and (a)(14) of the TDCPA. TEX. FIN. CODE ANN. §§ 392.304(a)(3), (a)(8), and (a)(14); Pl.'s Orig. Pet. at ¶¶ 27–30. Harris alleges that "Defendants mislead Plaintiff to believe that Defendants had loss mitigation programs available to Plaintiff and that Plaintiff just needed to submit certain information to Defendants and such would allow Plaintiff to keep his home. This information was sensitive information that was collected by Defendants through fraudulent, deceptive or misleading representations." Pl.'s Orig. Pet. at ¶ 29.

In its Motion to Dismiss, Cenlar argues for dismissal for two reasons. *First*, dismissal is required because Harris fails to allege specific factual bases to support his allegations. MTD at 3. *Second,* even if he had provided more specific factual allegations, Harris's claim still fails because Cenlar's alleged misrepresentations occurred in the context of a loan modification and "[d]iscussions between a loan servicer and a borrower

regarding loan modifications are not within the scope of the TDC[P]A . . . ." *Id.* at 4. The Court agrees with Cenlar on both counts.

With respect to sections 392.304(a)(3) and (a)(8), there are simply no factual allegations in Harris's Original Petition that concern representations (let alone misrepresentations) made by Cenlar to Harris. Although Harris asserts claims under different subsections—(a)(3) and (a)(8)—they both contain the predicate of section 392.304(a), which provides as follows: "Except as otherwise provided by this section, in debt collection or obtaining information concerning a consumer, *a debt collector may not use a fraudulent, deceptive, or misleading representation* that employs the following practices[.]" TEX. FIN. CODE ANN. § 392.304(a) (emphasis added). Thus, absent allegations of an "affirmative statement," Harris has failed to state a claim for violations of sections 392.304(a)(3) and (a)(8). *See Verdin v. Fed. Nat. Mortg. Ass'n*, 540 F. App'x. 253, 257 (5th Cir. 2013) (internal quotation marks omitted) ("To violate the TDCA using a misrepresentation, the debt collector must have made an *affirmative statement* that was false or misleading.").

To state a claim for violating section 392.301(a)(8), Harris was required to allege "[i]n debt collection," Cenlar threatened, coerced, or attempted to coerce Harris by threatening "to take an action prohibited by law." TEX. FIN. CODE ANN. § 392.301(a)(8). Again, Harris's Original Petition lacks any specified allegation of a threat or what action prohibited by law was threatened. To the extent the allegation concerns such threats or attempted coercion that occurred in the course of an attempted loan modification, Harris fails to state a claim because section 392.301(a)(8) prohibits such actions in "debt

6

collection" and the Fifth Circuit has held and reaffirmed, that "[c]ommunications in connection with the renegotiation of a loan do not concern the collection of a debt but, instead, relate to its *modification* . . . ." *Clark v. Deutsche Bank Nat'l Tr. Co.*, 719 F. App'x 341, 345 (5th Cir. 2018) (quoting *Thompson v. Bank of Am. Nat'l Ass'n*, 783 F.3d 1022, 1026 (5th Cir. 2015)). Although these cases address section 392.304(a)(19), the Court believes the same reasoning applies to section 392.301(a)(8) because it contains the "in debt collection" predicate. Therefore, based on the Fifth Circuit's holding in *Thompson*, if the threat, coercion, or attempted coercion occurred in the context of a loan modification, it did not occur "in debt collection," and thus Harris has failed to state a claim under section 392.301(a)(8).

Accordingly, the Court concludes that Harris's TDCPA claim should be and is hereby **DISMISSED without prejudice.**

### B. Harris's Negligent Misrepresentation Claim

Harris's Original Petition asserts a claim for negligent misrepresentation.[3] *See* Orig. Pet. at ¶¶ 31–34. Harris's negligent misrepresentation claim alleges that "Defendants, in the course and scope of their business, made false representations to Plaintiff regarding the Loan." *Id.* at ¶ 32. Harris contends that he has "lost time and money to submit the

---

[3]The elements of a negligent misrepresentation claim are (1) the representation is made by a defendant in the course of his business, or in a transaction in which the defendant has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers a pecuniary loss by justifiably relying on the representation. *Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp. 2d 725, 734 (N.D. Tex. 2011).

7

information that Defendants requested as [he] relied on the representations made by Defendants." *Id.* at ¶ 34. Cenlar argues that Harris asserts claims sounding in negligence, but "this type of claim is one that amounts to economic losses suffered due to Cenlar purportedly breaching a duty related to the terms of the loan." MTD at 5. Thus, Cenlar seeks dismissal of Harris's negligent misrepresentation claim pursuant to the economic loss rule. *Id.*

The economic loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007) (citing *Sw. Bell. Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494–95 (Tex. 1991)). "The rule is applicable to a claim for negligent misrepresentation in Texas." *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 763 (N.D. Tex. 2012) (citing *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663–64 (Tex. 1998)). "In determining whether a tort claim is merely a repackaged breach of contract claim, a court must consider: 1) whether the claim is for breach of duty created by contract, as opposed to a duty imposed by law; and 2) whether the injury is only the economic loss to the subject of the contract itself." *Stanley Indus. of S. Fla. v. J.C. Penney, Corp., Inc.*, 2006 WL 2432309, at *5 (N.D. Tex. Aug. 18, 2006) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.*, 960 S.W.2d 41, 45–47 (Tex. 1998)).

Harris seeks damages for lost time and money he incurred submitting documents in response to Defendants' alleged misrepresentations. Although these allegations are scant, Harris seeks recovery for injuries that are in reliance on the alleged misrepresentations, not

8

simply contractual damages. Thus, Harris's negligent misrepresentation claim is not barred by the economic loss doctrine. *See Hurd*, 880 F. Supp. 2d at 764 ("Since [the plaintiff] seeks out-of-pocket expenses incurred in reliance on the alleged representations, the injury alleged is over and above the economic loss to the subject matter of the note and deed of trust and is sufficient to avoid dismissal at this stage of the proceedings.").

    C.    **Harris's Request for Declaratory Judgment**

Harris's Original Petition also seeks declaratory judgment that the Deed of Trust is void and unenforceable "because Defendants failed to foreclose within four years of the date that the Loan was accelerated[.]" Orig. Pet. at ¶ 24; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 16.035(a) (providing that "[a] person must bring suit for the recovery of real property under a real property lien or the foreclosure of a real property lien not later than four years after the day the cause of action accrues"); *id.* at § 16.035(d) (providing that "[o]n the expiration of the four-year limitations period, the real property lien and a power of sale to enforce the real property lien become void"); *HSBC Bank USA, N.A. as Tr. for Merrill Lynch Mortg. Loan v. Crum*, 907 F.3d 199, 203 (5th Cir. 2018) ("When a note or deed of trust secured by real property includes an optional acceleration clause, 'the action accrues . . . when the holder actually exercises its option to accelerate.'") quoting *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001)).

Cenlar argues that Harris's request for declaratory relief should be dismissed because the Texas Declaratory Judgment Act does not apply in cases removed to federal courts on diversity jurisdiction and because Harris has failed to allege facts demonstrating that an actual controversy exists between the parties. MTD at 5.

9

As to Cenlar's first argument, Cenlar is correct that the federal Declaratory Judgment Act applies to cases removed from state court. *See Thompson v. Bank of America, N.A.*, 13 F. Supp. 3d 636, 660 (N.D. Tex. 2014) (citing *Miller v. CitiMortgage, Inc.*, 970 F. Supp. 2d 568, 591 (N.D. Tex. 2013)). Having determining that the federal Declaratory Judgment Act applies here, the Court utilizes the Fifth Circuit's three-step inquiry for analyzing whether Harris's federal declaratory judgment action should be dismissed:

> When considering a declaratory judgment action, a district court must engage in a three-step inquiry. First, the court must determine whether the declaratory action is justiciable. Typically, this becomes a question of whether an "actual controversy" exists between the parties to the action. *See Rowan Companies, Inc. v. Griffin*, 876 F.2d 26, 27–28 (5th Cir. 1989). A court's finding that a controversy exists such that it has subject matter jurisdiction is a question of law that we review *de novo. See In re Canion (Randall & Blake, Inc. v. Evans)*, 196 F.3d 579, 584 (5th Cir. 1999). Second, if it has jurisdiction, then the district court must resolve whether it has the "authority" to grant declaratory relief in the case presented. *See Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 776 (5th Cir. 1993) ("Prior to determining whether the district court abused its discretion by failing to review the merits of this case, this Court must first determine whether the district court had authority to grant a declaratory judgment here."). Third, the court has to determine how to exercise its broad discretion to decide or dismiss a declaratory judgment action. *See id.* at 778 (recognizing a district court's vast discretion in the declaratory judgment context).

*Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000).

The allegations are (again) scant. Harris asserts that CitiMortgage accelerated his loan more than four years ago, so he is entitled to a declaration that the lien is now void pursuant to Chapter 16 of the Texas Civil Practice and Remedies Code. Orig. Pet. at ¶¶ 20, 24. Although not often successful, such declaratory judgment actions are increasingly

common in federal court and often reach merits-based determinations. *See, e.g.*, *Marsh v. U.S. Bank, N.A.*, 755 F. App'x 166, 168 (5th Cir. 2019) (affirming summary judgment in favor of lender and concluding that "U.S. Bank's lien was still valid at the time of the foreclosure sale"); *Alvarado v. Citibank, N.A.*, 775 F. App'x. 164, 165 (5th Cir. 2019) (affirming summary judgment in favor of lender on borrower's declaratory judgment action after the "district court held that the four-year statute of limitations for a foreclosure in Texas was no barrier here"); *Sexton v. Deutsche Bank Nat'l Tr. Co. for GSAMP Tr. 2007-FM2, Mortgage Pass-Through Certificates, Series 2007-FM2*, 731 F. App'x. 302, 304 (5th Cir. 2018) (affirming summary judgment in favor of lender after borrowers' "action in state court, seeking a declaratory judgment that the bank's security interest and transfer of deed pursuant to the foreclosure sale are void and unenforceable" had been removed to federal court); *Page v. JPMorgan Chase Bank, N.A.*, No. 4:15-CV-367-A, 2015 WL 4464097, at *3 (N.D. Tex. July 21, 2015) (McBryde, J.) (denying lender's motion to dismiss removed "action . . . brought pursuant to the declaratory judgment statutes of the State of Texas for a declaration that the deed of trust lien is unenforceable due to [lender's] failure to enforce its rights under the deed of trust within the four-year period contemplated by section 16.035(b)").

Accordingly, the Court concludes that Harris's request for declaratory judgment is justiciable and that the Court has authority to grant the requested relief. Therefore, Harris has stated a claim for relief on its request for declaratory judgment.

### D. Injunctive Relief

Finally, Harris's Original Petition seeks injunctive relief to restrain Defendants from conducting the foreclosure that was scheduled to take place on August 6, 2019. Orig. Pet. at ¶ 37. Cenlar seeks dismissal of Harris's request for injunctive relief on the ground that the request is now moot because the August 6 foreclosure never occurred.[4] MTD at 6.

Cenlar is correct that Harris's request for injunctive relief to prevent the August 6 foreclosure sale should be dismissed because that issue is moot. *See Bejjani v. Wilmington Tr. Co.*, No. CIV.A. H-10-2727, 2011 WL 3667569, at *6 (S.D. Tex. Aug. 22, 2011) (granting summary judgment that "request for injunctive relief is moot because the anticipated foreclosure sale was cancelled").

Accordingly, the Court concludes that Harris's request for injunctive relief should be and is hereby **DISMISSED without prejudice.**

### E. Dismissal with Prejudice or Dismissal without Prejudice and Leave to Replead

Dismissal without prejudice is appropriate if a federal court finds that the plaintiff has not alleged his best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999). Thus, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid

---

[4]Cenlar also sought dismissal on the ground that injunctive relief is dependent on an underlying cause of action, so if the Court dismissed all of Harris's underlying causes of action, it should likewise dismiss the claim for injunctive relief. *Id.* Because the Court does not dismiss all of Harris's claims, the Court need not address this argument.

dismissal." *Lopez–Santiago v. Coconut Thai Grill,* No. 3:13–CV–4268–D, 2014 WL 840052, at *5 (N.D. Tex. Mar. 4, 2014) (quoting *In re American Airlines, Inc., Privacy Litigation*, 370 F. Supp. 2d 552, 567–68 (N.D. Tex. 2005)).

However, the Court must balance its preference for affording a plaintiff at least one opportunity to amend against the fact that Harris has failed to respond to Cenlar's Motion to Dismiss, even after the Court granted Harris an extension. *See* ECF Nos. 8–9. "When a plaintiff fails to respond to a motion to dismiss, the Court has discretion to find that the plaintiff has forfeited the right to continue litigating the claim." *Scott v. Liberty Cty, Tex.*, No. 1:10-CV-609-TH, 2012 WL 6000405, at *8 (E.D. Tex. Nov. 30, 2012). As the Seventh Circuit Court of Appeals has aptly explained, dismissal may be appropriate because judges are not required to do non-responding plaintiffs' work for them:

> Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning. An unresponsive response is no response.

*Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999).

This case was filed in August 2019 and removed to this Court on August 13, 2019. Harris has not filed an amended pleading since this case was removed. Therefore, given the early stage of this case and despite Harris's failure to file a response, the Court **GRANTS** Plaintiff leave to amend his pleadings.

IV. **CONCLUSION**

For the foregoing reasons, the Court finds that Cenlar's Motion to Dismiss (ECF No. 6), should be and is hereby **GRANTED in part** and **DENIED in part.** Accordingly,

13

the Court **DISMISSES** Harris's TCPA claim and request for injunctive relief **without prejudice.** The Court **denies** Cenlar's Motion to Dismiss as to Harris's negligent misrepresentation claim and request for declaratory judgment.

Harris is **GRANTED** leave to amend to cure any defects **on or before November 19, 2019**. If Harris fails to respond by this deadline, or if a timely amended complaint is subsequently dismissed, Harris's TDCPA claim and request for injunctive relief will be **DISMISSED with prejudice**. If Harris files an amended complaint, Cenlar's deadline to respond is by **21 days** from the date of filing.

**SO ORDERED** on this **29th day** of **October, 2019**.

                                                 Mark T. Pittman
                                                 UNITED STATES DISTRICT JUDGE